IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES *ex rel*,
ROSALIND L. WYNNE,

           Plaintiff,

     vs.                       **Case No. 05-4035-RDR**

BLUE CROSS AND BLUE SHIELD
OF KANSAS,INC.,

           Defendant.

_____

### MEMORANDUM AND ORDER

Rosalind L. Wynne brings a qui tam action against Blue Cross Blue Shield of Kansas (BCBS), Inc., pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733.  Ms. Wynne was employed by BCBS from August 31, 1964 to February 13, 1996 in its Government Programs division.   This matter is presently before the court upon BCBS's motion for judgment on the pleadings for failure to state a claim pursuant to Fed.R.Civ.P. 12(c) and 12(b)(6).

Ms. Wynne filed this action in the United States District Court for the District of Maryland on February 16, 2000. Subsequently, the government elected not to intervene in the case. Plaintiff's counsel then withdrew.  Plaintiff sought transfer to this court in 2004.  The action was thereafter transferred on March 16, 2005.  BCBS then sought dismissal because Ms. Wynne, as a pro se litigant, was not a proper party to act as a relator in a qui tam suit on behalf of the federal government.  An attorney subsequently entered an appearance on her behalf.  This attorney

was later disbarred from the practice of law.  Other counsel have now entered appearances on behalf of Ms. Wynne.

Ms. Wynne's complaint is 58 pages long, asserting nine claims[1] in over 200 numbered paragraphs.  The nine counts can be summarized as follows:  (I) BCBS disabled its computer software program's "Edits and Audits;" (II) BCBS utilized "Force Codes" to manage its claims; (III) BCBS renumbered and recontrolled its claims when it changed computer systems; (IV) BCBS manipulated the Contractor Performance Evaluation data; (V) BCBS improperly paid "Not Otherwise Classified" claims; (VI) BCBS failed to implement mandated changes of the Health Care Financing Administration (HCFA); (VII) BCBS reduced the "Payment Floor" time limit; (VIII) BCBS gave preferential treatment to certain providers; and (IX) BCBS falsified HCFA reports.

BCBS seeks dismissal for two reasons.  It contends initially that dismissal is appropriate on each of the counts of the complaint because each fails to adequately plead fraud with sufficient particularity.  It next seeks judgment on all of the claims which predate February 16, 1994 because they are barred by the applicable statute of limitations.

A Rule 12(c) motion for judgment on the pleadings is governed

---

[1] The complaint contains nine counts, but two of them are designated as Count VI.  For the purposes of this order, the court shall renumber the second Count VI and the subsequent counts as Count VII, Count VIII and Count IX.

by the same standards as a Rule 12(b)(6) motion to dismiss.  Mock v. T G & Y, 971 F.2d 522, 528 (10th Cir. 1992).  The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, Maher, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff.  Witt v. Roadway Express, 136 F.3d 1424, 1428 (10th Cir. 1998).

     The FCA states:  "Any person who . . . knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person. . . ."  31 U.S.C. § 3729(a). The FCA authorizes private citizens to bring actions on behalf of the United States.  31 U.S.C. § 3730(b).  These plaintiffs are known as qui tam relators.  To establish a cause of action under the FCA, a relator must prove three elements:  (1) a false or

3

fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false. 31 U.S.C. § 3729(a). To establish the element of knowledge, a relator must show that the defendant (1) had actual knowledge that it submitted a false or fraudulent claim for payment, (2) acted in deliberate ignorance of the truth or falsity of its claim, or (3) acted in reckless disregard of its truth or falsity. 31 U.S.C. § 3729(b). Allegations of mere negligence or innocent mistake do not give rise to FCA liability. Id. The relator stands in the shoes of the United States government and can recover, for the United States, the losses attributable to any fraudulent claim and the civil penalty authorized by the statute. 31 U.S.C. § 3730.

Medicare is a federal insurance program administered by the Department of Health and Human Services through the HCFA[2] to help pay the costs of health care services for elderly and disabled individuals. 42 U.S.C. §§ 1395 et seq. As a general matter, Medicare Part A provides insurance for inpatient hospital and post-hospital services, while Part B covers certain physicians' charges and other medical services, including outpatient diagnostic laboratory services. Under both Medicare Part A and Part B, claims

---

[2] In 2001, after the filing of this complaint, the HCFA was renamed the Centers for Medicare and Medicaid Services. In this opinion, the court shall refer to the HCFA as the agency responsible for administering the Medicare program since both parties have done so in their briefs.

are processed in the first instance by private insurance companies, called "fiscal intermediaries" or "carriers," respectively. <u>See</u> 42 U.S.C. §§ 1395h(a), 1395u(a).   According to the relator's complaint, BCBS was the carrier and fiscal intermediary for Medicare claims arising in the states of Kansas, Nebraska and a portion of Missouri during the relevant periods in this case.

Complaints alleging a violation of the FCA must comply with Fed.R.Civ.P. 9(b) because the FCA is an anti-fraud statute. <u>United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.</u>, 232 F.3d 902, 2000 WL 1595976 at ** 3 (10th Cir. 2000).   Rule 9(b) states "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." <u>Id</u>. (quoting Fed.R.Civ.P. 9(b)).   In <u>Schwartz</u>, the Tenth Circuit provided additional guidance on the application of Rule 9(b) to FCA claims:

> "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." [<u>United States ex rel.</u>] <u>Thompson</u> [v. <u>Columbia/HCA Healthcare Corp.</u>], 125 F.3d [899] at 903 [(5th Cir. 1998)] (quoting <u>Williams v. WMX Tech., Inc.</u>, 112 F.3d 175, 179 (5th Cir. 1997)); <u>see also Harrison</u> [v. <u>Westinghouse Savannah River Co.</u>], 176 F.3d [776] at 784 [(5th Cir. 1999)] ("[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby.'") (quoting 5 Charles Alan Wright and Arthur R. Miller, <u>Federal Practice and Procedure: Civil</u> § 1297, at 590 (2d ed. 1990)).

.    .    .    .    .

Additionally, while we have acknowledged that

> "'[a]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge,'" even in such situations the complaint must "set[ ] forth the factual basis for the plaintiff's belief." <u>Koch v. Koch Indus., Inc.</u>, 203 F.3d 1202, 1237 (10th Cir. 2000) (quoting <u>Scheidt v. Klein</u>, 956 F.2d 963, 967 (10th Cir. 1992)), <u>cert. denied</u>, 2000 WL 949074, 68 U.S.L.W. 3023 (U.S. Oct. 10, 2000), and <u>cert. denied</u>, 2000 WL 1201643, 69 U.S.L.W. 3128 (U.S. Oct. 10, 2000). <u>See</u> <u>Thompson</u>, 125 F.3d at 903 ("[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief."); <u>see also</u> <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1279 n. 3 (D.C.Cir. 1994); <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993); <u>United States ex rel. Butler v. Magellan Health Servs., Inc.</u>, 74 F.Supp.2d 1201, 1216 (M.D.Fla. 1999) ("[T]he relaxed standard does not remove the plaintiff's duty to adequately plead the content of the alleged fraudulent representations and the places where the activity was to have occurred."). "A special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the discovery process that the statute itself does not contemplate." <u>Russell</u>, 193 F.3d at 309.

<u>Id</u>. at ** 3-4.

Thus, Rule 9(b) requires the relator to allege (1) the time, place and content of the fraud; (2) the fraudulent scheme; (3) the fraudulent intent; and (4) the injury. The heightened pleading requirements are intended to provide the defendant fair and adequate notice of the plaintiff's claim and to protect the defendant from reputational damage that "improvident charges of wrongdoing" may cause. <u>Farlow v. Peat, Marwick, Mitchell & Co.</u>, 956 F.2d 982, 986 (10th Cir. 1992).

In Count 1, Ms. Wynne alleges that BCBS used a software program to aid in the processing of claims. The software contains an "edits and audits" feature designed to automatically detect

errors and problems "appearing on the Claims and suspend other Claims for manual development." Ms. Wynne asserts that BCBS disabled this feature "[f]rom at least August 1988, through December 1995" to "reduce potential backlogs when Claims inventory was high and to avoid interest payments when Claims were not processed in the required time." Ms. Wynne points to one example that occurred "[b]etween June, 1990, and October 1991" where she states "on information and belief" that BCBS paid for a claim that should have been denied because the edit feature was disabled. She further alleges, without providing any additional examples: "As a result of Defendant's disabling or suspending the Edits and Audits, the Government has paid Claims for which it was not liable and physicians and suppliers that provide services and supplies to Medicare patients have received overpayments to which they were not entitled."

In Count 2, Ms. Wynne alleges that the aforementioned software program contains "Force Codes" that allowed BCBS processors to bypass "Edits and Audits." The use of these Force Codes allegedly allowed BCBS to process older claims on a timely basis. She alleges: "Defendant improperly utilized Force Codes to manage its inventory of claims, avoid payment of interest on claims that were suspended for development but were aged, and to meet HCFA CPEP requirements relating to timeliness processing requirements." Ms. Wynne indicates, on information and belief, that BCBS improperly

utilized Force Coding "from 1988 though at least July 1995."  She
further suggests that "[d]efendant's improper utilization of Force
Coding resulted in improper processing and payment of Claims
thereby damaging the Government."  She again asserts:  "As a result
of Defendant's improper utilization of Force Coding, the Government
has paid Claims for which it was not liable and physicians and
suppliers that provide services and supplies to Medicare patients
have received overpayments to which they were not entitled."

    In Count 3, Ms. Wynne alleges that in December 1988, BCBS
renumbered claims when it changed computer systems.  She further
contends, based upon information and belief, that BCBS deleted
claims generated by the old computer and fraudulently reported to
the HCFA that it had processed these claims.  Ms. Wynne asserts,
again based upon information and belief, that BCBS "has employed
the same or similar fraudulent scheme of deleting documents but
reporting them to HCFA as processed, through at least 1995."  She
states:  "Defendant fraudulently induced the Government to pay
Defendant for administrative services in accordance with its
contracts from approximately 1988 through 1995 by submitting
payment requests for services not rendered."

    In Count 4, Ms. Wynne alleges that BCBS fraudulently
manipulated the Contractor Performance Evaluation Program (CPEP)
from at least 1988 through 1995 by (1) placing missing documents in
CPEP files; (2) by deleting files that exceeded the timeliness

requirement but reporting them as processed; and (3) changing the Post Payment Quality Assurance (PPQA) sample or reporting PPQA error containing claims as correct.   The CPEP measured BCBS's compliance with standards and criteria set forth by the HCFA for carriers.   The CPEP involved an inspection by HCFA of BCBS's operations, including an on-site visit to BCBS's headquarters in Topeka, Kansas.   Ms. Wynne states that in 1993, during an on-site visit by HCFA, BCBS manipulated the CPEP by (1) instructing employees to hide documents; (2) excluding documents; (3) adding documents that were found to be missing; and (4) changing dates to show that the documents were timely.   Ms. Wynne points to other examples of manipulation that occurred in 1989 and 1990.   She states that the CPEP manipulation was "ongoing from at least 1988 through 1995."   She further alleges: "Defendant's CPEP manipulation resulted in the presentation of false claims and reports to the Government."

In Count 5, Ms. Wynne asserts that BCBS paid "not otherwise classified" (NOC) claims without properly processing them.   A claim was designated as NOC if it was submitted without a proper code and a description of the service provided.   She alleges that BCBS processors were instructed to release NOC claims that were for less than $50.00 when they had been suspended for further development by the Edits and Audits program.   She states: "Defendant's failure and refusal to properly develop NOC Claims resulted in improper

processing and payment of NOC Claim thereby damaging the Government." She further states: "The Government was damaged as a result of Defendant's improper processing and payment of NOC Claims without development in that the Government paid Claims that should not have been paid and Defendant was reimbursed for its administrative costs when it was not complying with its HCFA contracts."

In Count 6, Ms. Wynne asserts that BCBS would not implement changes in its computer system when instructed by HCFA unless BCBS determined that it was cost effective. She further alleges that in 1989 BCBS did not implement HCFA mandated changes because it had "difficulty implementing the required changes into the computer." She indicates that BCBS's failure to implement these changes was "fraudulent." She further states: "The Government was damaged as a result of Defendant's improper processing and payment of Claims during periods when it had not implemented HCFA mandated changes in that the Government paid Claims that should not have been paid and Defendant was reimbursed for its administrative costs when it was not complying with its HCFA contracts."

In Count 7, Ms. Wynne alleges that BCBS paid certain claims prior to the mandated HCFA "payment floor." She notes: "HCFA prohibits Carriers from paying providers or physicians until a specified amount of time has occurred from the receipt of a Claim. This limitation is known as the 'payment floor.'" She asserts that

10

BCBS intentionally reduced the payment floor "[i]n either 1993 or 1994" so that "[BCBS] could inflate the number of processed claims it reported to HCFA." She alleges: "Defendant's intentional reduction of the Payment Floor system was a breach of its contracts and violation of HCFA requirements." She further alleges: "The Government was damaged as a result of Defendant's intentional reduction of the Payment Floor in that the Government paid Claims earlier then (sic) allowed and Defendant was reimbursed for its administrative costs when it was not complying with its HCFA contracts."

In Count 8, Ms. Wynne alleges that BCBS gave preferential treatment to certain physicians and providers in 1993 and 1994. She asserts, inter alia, that BCBS processors were instructed to override the edits and audits on suspended claims. She alleges, on information and belief, that BCBS did not report the preferential treatment to HCFA. She suggests that HCFA would not have renewed BCBS's contract if it had been aware of the preferential treatment. She contends that the government was damaged as a result of these actions because (1) "overpayments were made that were not recouped;" (2) the government continued to renew BCBS contracts; and (3) the government continued to pay BCBS for its administration of contracts.

In Count 9, Ms. Wynne alleges that BCBS falsified reports to HCFA "by inflating the number of documents completed and

11

processed." Ms. Wynne states that in 1996 a BCBS employee explained to another employee how to falsify an HCFA report. She suggests, on information and belief, that falsified reports were sent to HCFA from at least 1988 through 1996. She states: "The Government was damaged as a result of Defendant's submission of falsified HCFA Reports in that Defendant was reimbursed for its administrative costs when it was not complying with its HCFA contracts and HCFA was misled into renewing Defendant's Carrier contracts."

The defendant has meticulously examined each count and asserted why each one should be dismissed for plaintiff's failure to plead with the particularity required by Rule 9(b) or why several of the claims should be dismissed as beyond the applicable statute of limitations. With regard to their arguments concerning the lack of Rule 9(b) particularity, the defendant has specifically set forth the problems and omissions on each count. The defendant repeatedly points out that, even though plaintiff has alleged some sort of misconduct by it in processing claims, plaintiff has failed to show how this misconduct resulted in a false claim. The defendant notes time and again that plaintiff has failed to identify one false or fraudulent claim that it submitted during the relevant time period.

Plaintiff's response can only be described as curious.[3] Plaintiff has countered the defendant's arguments with a variety of contentions, many of which lack any support from a factual or legal basis.  The court shall address some of these assertions and then proceed to consider the arguments made by the defendant.

Plaintiff appears initially to suggest, at least implicitly, that the reason the complaint fails to comply with Rule 9(b) is that it was not applicable at the time the complaint was written in 2000.  This particular argument is written in the response as follows:  "However, at the time the complaint was written, her attorney likely did not have notice that a heightened pleading standard would apply:  '[c]laims brought under the FCA must comply with Federal Rule of Civil Procedure 9(b), which requires pleading with particularity in cases alleging fraud.' Id. at 328."

Although plaintiff uses an ibid to support her contention, the response fails to reference a preceding authority.  A review of Westlaw reveals that plaintiff's quotation came from United States ex rel. Doe v. Dow Chemical Co., 343 F.3d 325, 328 (5th Cir. 2003). The Fifth Circuit has recognized since at least 1997 that Rule 9(b)

---

[3] Perhaps the most curious aspect of the response is plaintiff's contention that she has adequately stated a claim of retaliation under 31 U.S.C. 3730(h).  Plaintiff spends approximately two pages of her eleven page response on this argument.  This is peculiar because plaintiff's complaint fails to even address such a claim.  There is no mention or hint of it in the complaint.  As correctly pointed out by the defendant, the deadline for amending her complaint has long since passed.

applies to FCA claims.   See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997). Other courts reached this conclusion in the early 1990's.   See, e.g., Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2nd Cir. 1995) (citing district court cases for that proposition from 1988 to 1995); Cooper v. Blue Cross Blue Shield of Florida, Inc., 19 F.3d 562, 568 (11th Cir. 1994).   Accordingly, any suggestion that the plaintiff should be forgiven for her failure to comply with Rule 9(b) lacks merit.

Plaintiff follows up the aforementioned argument with contentions that (1) Rule 9(b) does not require a party to plead detailed evidentiary matters; (2) the requirement of pleading fraud is relaxed in cases involving numerous incidents occurring over a long period of time; (3) the particularity requirements of Rule 9(b) do not apply where the facts are peculiarly within the knowledge of opposing party; and (4) her complaint as written, at least Count III, contains sufficient particularity.

The court need not spend much time with plaintiff's initial argument.   As previously noted in this opinion, Rule 9(b) does require a plaintiff to identify and Rule 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of the alleged fraud.   While detailed evidentiary matters may not be required, the factual basis must be stated.

As also noted previously, the next two arguments noted by the

plaintiff also lack merit.  The requirements of pleading in an FCA case are not relaxed when the fraud takes place over a long period of time or when the facts are within the knowledge of the opposing party.  As the court in <u>United States ex rel. Russell v. Epic Healthcare Management Group</u>, 193 F.3d 304, 309 (5th Cir. 1999) stated:

> [T]he False Claims Act grants a right of action to private citizens only if they have independently obtained knowledge of fraud.  <u>See</u> 31 U.S.C. § 3730(e)(4).  With this requirement the government seeks to purchase information it might not otherwise acquire.  It must decide on review of the sealed complaint whether to take the case over.  A special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the discovery process that the statute itself does not contemplate.

<u>See also</u> <u>United States ex rel. Karvelas v. Melrose-Wakefield Hospital</u>, 360 F.3d 220, 231 (1st Cir. 2004) ("[W]e hold that a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."); <u>United States ex rel. Clausen v. Lab. Corp. of America, Inc.</u>, 290 F.3d 1301, (11th Cir. 2002) (noting that allowing a plaintiff "to learn the complaint's bare essentials through discovery . . . may needlessly harm a defendant['s] goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [contains] baseless allegations used to extract settlements."), <u>cert. denied</u>, 537 U.S. 1105 (2003).

Having considered these arguments, we now turn to defendant's

arguments that plaintiff has failed to allege fraud with sufficient particularity.   Plaintiff's response is again quite unusual.   On the one hand, she contends that her claims do sufficiently allege fraud under Rule 9(b).   On the other hand, she asserts that she should be allowed to amend her complaint to provide the necessary specificity.

The argument that her complaint contains sufficient particularity is as bizarre as some of her other contentions.   This argument only refers to Count III of the complaint.   She suggests that paragraphs 30 to 41 of this count provide the requisite "who, what, when, where and how" of the alleged fraud.

The court has thoroughly examined plaintiff's complaint as our summary of the counts previously in this opinion suggests.   The complaint suffers from a variety of flaws.   The court will detail at least some of them.   The court agrees with the defendant that plaintiff has failed to sufficiently plead fraud under the FCA in each of the counts.   The court is not persuaded that plaintiff has adequately delivered the "who, what, when, where and how" of the alleged fraud on each count, even Count III, the one count where plaintiff argued she had complied with Rule 9(b).   Plaintiff has not identified any specific false or fraudulent claim that BCBS submitted to the government.   Despite the length of the complaint and plaintiff's purported personal knowledge, not a single false or fraudulent claim is set forth.   The fact that plaintiff has

16

described procedures that might have allowed the defendant to submit false claims does not allow this court to speculate that false claims were in fact submitted. <u>See</u>, <u>e.g.</u>, <u>United States ex rel. Walsh v. Eastman Kodak Co.</u>, 98 F.Supp.2d 141, 147-48 (D.Mass. 2000) (dismissing complaint under Rule 9(b) where relator set out a methodology by which the defendants might have produced false claims without citing an actual false claim).

The particular standard for providing the necessary particularity in an FCA case was set forth in <u>Karvelas</u> as follows:

> As applied to the FCA, Rule 9(b)'s requirement that averments of fraud be stated with particularity-specifying the "time, place, and content" of the alleged false or fraudulent representations, means that a relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint. However . . . we believe that some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

360 F.3d at 232-33 (citations, footnotes and quotations omitted).

The defendant has argued that the court should dismiss the plaintiff's complaint rather than allowing her to file an amended complaint. It argues that re-pleading would be futile. We cannot

17

agree.   The court believes that plaintiff should be given an opportunity to address the deficiencies contained in her claims. The court shall allow plaintiff to file an amended complaint within twenty days of the date of this order.

The court shall not dismiss any of the claims at this time based upon the statute of limitations.  While it is proper to grant a Rule 12(b)(6) motion if noncompliance with the statute of limitations is apparent on the face of the complaint, such is not the case here.  See Rohner v. Union Pacific Railroad Co., 225 F.2d 272, 274 (10th Cir. 1955).  Each of the claims alleges wrongful acts occurring within the applicable six-year statute of limitations. The court would note that it reaches this conclusion despite finding no support for plaintiff's contention that a "continuing violation" theory applies to FCA claims.  Additional facts are necessary to address the defendant's motion.  Accordingly, we cannot grant the defendant's motion based upon this argument.

**IT IS THEREFORE ORDERED** that defendant's motion for judgment on the pleadings for failure to state a claim be hereby held in abeyance pending the filing of an amended complaint by the plaintiff.  Plaintiff shall have twenty days in which to file the amended complaint.  If an amended complaint is not timely filed, the court shall grant the defendant's motion.  If an amended complaint is filed, the court will deny defendant's motion.

**IT IS SO ORDERED.**

18

Dated this 21st day of April, 2006 at Topeka, Kansas.


                         s/Richard D. Rogers
                         United States District Judge